**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

_____

NORTH AMERICAN RUBBER : 
THREAD COMPANY, INC. : 
On behalf of itself and all others : 
Similarly situated, : 
 : 
Plaintiff, :          CIVIL ACTION NO.
 : 
 : 
v. :          JURY TRIAL DEMANDED
 : 
BAYER AG; BAYER CORPORATION; : 
BAYER POLYMERS, LLC; POLIMERI : 
EUROPA S.R.L.; and POLIMERI EUROPA : 
AMERICAS, INC., : 
 : 
Defendants. : 
 : 
_____: March 24, 2005

CLASS ACTION COMPLAINT

Plaintiff, North American Rubber Thread Company, by its undersigned counsel, individually and on behalf of the class identified below, brings this action for treble damages, injunctive relief and costs of suit under the antitrust laws of the United States, Section 1 of the Sherman Act. In support of its complaint against defendants, plaintiff alleges as follows:

NATURE OF THE ACTION

1.      This action arises from a conspiracy to fix, maintain or stabilize prices, allocate markets and unreasonably restrain trade for the sale of polychloroprene rubber (referred to as "PCP") by manufacturers of PCP, which resulted in supra-competitive prices for PCP.  PCP is a versatile synthetic rubber used in a variety of products including contact adhesives,

lamination, foam bonding and pressure sensitive applications. Defendants are among the largest manufacturers and sellers of PCP in the United States.

2.      In bringing this action, plaintiff seeks to recover treble damages for violations of the United States antitrust laws. During the relevant time period, defendants were involved in the production, manufacture, distribution and/or sale of PCP to customers in the United States and throughout the world. As further alleged herein, during the period from at least January 1, 1999 through December 31, 2003 (the "Class Period"), defendants and their co-conspirators agreed, combined and conspired with each other to fix, maintain or stabilize prices and allocate markets for the sale of PCP. As a result of defendants' unlawful conduct, plaintiff and members of the class paid prices for PCP higher that they would paid in a competitive market and have been damaged thereby.

<u>JURISDICTION AND VENUE</u>

3.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive belief, and the costs of this suit, including reasonable attorneys' fees, for defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337 and by Sections 4 and 6 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.      Venue is proper in this district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b),(c) and (d), because during the Class Period defendants transacted business were found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion

of the affected interstate trade and commerce described below has been carried out, in this district.

6.     This Court has *in personam* jurisdiction over the defendants because they transacted business throughout the United States, manufactured, sold, shipped and delivered substantial quantities of PCP throughout the United States, had substantial contacts with the United States, and were engaged in an illegal scheme and price-fixing conspiracy that was directed and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

<u>PLAINTIFF</u>

7.     Plaintiff Standard Rubber Products, Inc., ("Standard Rubber") was at all relevant times a Massachusetts corporation with its principal place of business located in Hanover, Massachusetts.  During the Class Period, Standard Rubber purchased PCP directly from the defendants and/or their co-conspirators, and has been injured in its business and property by reason of the antitrust violations alleged in this Complaint.

<u>DEFENDANTS</u>

8.     Defendant Bayer AG is a German corporation with its principal place of business in Bayerweck, Germany.  Bayer AG conducts its operations globally, and has significant business operations in the United States, which it conducts both in its own right and through a number of wholly-owned and controlled subsidiaries and affiliates, including defendants Bayer Polymers LLC and Bayer Corporation.  Bayer AG is a global conglomerate that conducts its operation throughout the world (including the United States) through a fully integrated organization that, by Bayer's own admission, operates as a single economic entity.[1]

---

[1] Indeed, Bayer has publicly represented on its official internet website (put in the www cite) that the Bayer organizations for the various countries or groups of countries around the world support the activities of the

At all relevant times, defendant Bayer AG manufactured, marketed, sold, and/or distributed polychloroprene in the United States and throughout the world both directly and through its predecessors, affiliates, parents and/or subsidiaries. In addition to its pervasive and systematic contacts within the U.S., defendant Bayer AG has had numerous and systematic contacts with the United States as a whole so as to justify *in personam* jurisdiction upon it by the Courts of the United States.

9.      Defendant Bayer Polymers LLC is a Delaware corporation with its principal place of business in Pittsburg, Pennsylvania. Defendant Bayer Polymers LLC manufactured, marketed, sold, and/or distributed polychloroprene in the United States during the Class Period, both directly and through its predecessors, affiliates, parents and/or subsidiaries.

10.     Defendant Bayer Corporation ("Bayer") is a Pennsylvania corporation and is a wholly-owned subsidiary of Bayer AG, with its principal place of business in Pittsburg, Pennsylvania. At all relevant times, defendant Bayer manufactured, marketed, sold, and/or distributed polychloroprene in the United States during the Class Period both directly and through its predecessors, affiliates, parents and/or subsidiaries.

11.     Defendant Polimeri Europa S.r.l., ("Polimeri") is an Italian Corporation based in Milan, Italy. Polimeri wholly owns and controls Polimeri Europa Americas, Inc., a Delaware company based in Houston, Texas. In or about 2001, Enichem S.p.A. ("Enichem"), an Italian corporation that manufactures, distributed and sold polychloroprene worldwide, merged with Polimeri. Polimeri manufactured, marketed and/or sold polychloroprene in the United States

---

business areas at local level. They are adapted in most cases to reflect…changes in the Group structure, with new entities also being established where necessary or appropriate… Even in its new structure, however, Bayer continues to see itself as a single, unified enterprise."
www.bayer.com/about_bayer/organizational_structure/page703.htm

during the Class Period, both directly and through its predecessors, affiliates, parents and/or subsidiaries.

12.     Defendant Polimeri Europa Americas, Inc. ("Polimeri U.S.") is a Delaware corporation based in Houston, Texas.  Polimeri U.S. is owned and wholly controlled by defendant Polimeri.  Polimeri U.S. was formerly known as Enichem Americas, Inc. Polimeri U.S. manufactured, marketed and sold polychloroprene in the United States during the Class Period, both directly and through its predecessors, affiliates, parents and/or subsidiaries.

13.     Whenever a reference in this Complaint is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, control or transaction of the corporation's business or affairs.

## AGENTS AND CO-CONSPIRATORS

14.     The acts alleged in this complaint to have been done by each defendant were authorized by their parent companies.

15.     Various other persons, firms and corporations, not named as defendants in this Complaint, have participated as co-conspirators and performed acts and made statements in furtherance of the conspiracy.

## INTERSTATE TRADE AND COMMERCE

16.     Plaintiff incorporates by references as if fully set forth herein, the allegations contained in paragraphs 1-15 of this Complaint.

17.     The activities of defendants, and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected, interstate commerce.

18.     During the time period covered by this Complaint, defendants manufactured, sold and/or distributed PCP throughout the United States.

19.     Defendants have manufactured, sold and shipped substantial quantities of PCPs in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the defendant produces PCP.

CLASS ACTION ALLEGATIONS

20.     Plaintiff brings action on its own behalf and as a class action under the provisions of Rules 23(a), and (b) (3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons and entities who purchased polychloroprene in the
> United Sates or from a facility located in the United States,
> directly from the defendants or their co-conspirators from January
> 1, 1999 through December 31, 2003.  Excluded from the class
> are all governmental entities, the defendants, their co-conspirators
> and their respective parents, subsidiaries and affiliates.

21.     Because such information is in the exclusive control of the defendants and/or their co-conspirators, plaintiff does not know the exact number of class members.  Due to the nature of the trade and commerce involved, however, plaintiff believes that class members number at least in the hundreds and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all class members is impracticable.

22.     Plaintiff is a member of the class, plaintiff's claim are typical of the claims of the class member, and plaintiff will fairly and adequately protect the interest of the class. Plaintiff is a direct purchaser of PCP from the defendants and/or their co-conspirators and its interests are coincident with and not antagonistic to those of the other members of the class.  In

addition, plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

23.     There are questions of law or fact common to the class, including;

     a.     Whether defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or allocate markets and customers for the sale of PCP in the United States;

     b.     The identity of the participants in the conspiracy;

     c.     The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by defendants and their co-conspirators in furtherance of the conspiracy;

     d.     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

     e.     Whether the conduct of defendants and their co-conspirators, caused injury to the business or property of plaintiff and the other members of the class;

     f.     The effect of defendants' conspiracy on the prices of PCP sold in the United States during the Class Period;

     g.     The appropriate measure of damages sustained by plaintiff and other members of the class; and

     h.     Whether plaintiff and the class are entitled to injunctive relief.

24.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability damages.

25.     A class action is superior to other methods for the fair and efficient adjunction of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjunction of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

27.     This class action presents no difficulties in management that would preclude maintenance as a class action.

28.     Finally, the class is readily definable and is one for which records likely exist in the files of defendants' and their co-conspirators.

POLYCHLOROPRENE "(PCP")

29.     Polychloroprene ("PCP"), is one member in a family of synthetic rubber products.  PCP, like all other synthetic rubber, is man-made and is produced in manufacturing plants that synthesize it from petroleum and other minerals.

30.     PCP is a versatile synthetic rubber that was originally developed as an oil-resistant substitute for natural rubber.  PCP resist degradation from sun, ozone and weather, performs well in contact with oils and many chemicals, remains useful over a wide temperature range, displays outstanding physical toughness, resists burning inherently better than exclusively hydrocarbon rubbers, and has outstanding resistance to damage caused by flexing and twisting.

31.     PCP is not a final product, but rather a raw material from which the final products may be formulated.  PCP is used in a variety of products including contact adhesives, lamination, foam bonding and pressure sensitive applications.  PCP can also be used for dipped products like gloves and coatings as well as cable and wire jacketing.  PCP is also used in the automotive industry for various parts such as transmission belts, homo-cinetic joints and motor air conduits.  PCP is a commodity product that does not vary materially depending upon manufacturer, such that the PCP manufactured by the defendant is fungible with PCP manufactured by any other PCP producer.

32.     The PCP industry in the United States and worldwide is concentrated, thus facilitating coordination of prices of PCP.

33.     The defendants and their co-conspirators are collectively the principal manufacturers and sellers of PCP domestically and worldwide.

34.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-33 of this Complaint.

35.     Beginning at least as early as January 1, 1999 an continuing at least through December 31, 2003, the exact dates being unknown to plaintiff, defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for PCP in the United States in violation of Section 1 of the Sherman Act, U.S.C. § 1.

36.     This illegal contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among defendants and their co-conspirators, the substantial terms of which were:

        a.     To fix, maintain and stabilize prices for the sale of PCP throughout

the United States and elsewhere;

b.     To allocate amongst themselves areas in the United States for the purpose of selling PCP;

c.     To participate in meetings and conversations wherein market allocation and the price of PCP sold in the United States were discussed; and

d.     To enter into agreements during those meetings and conversations to charge prices at certain levels for PCP sold in the United States, to increase and maintain prices of PCP sold in the United States and to allocate among major producers of PCP the market shares of PCP to be sold in the United States;

e.     To exchange information on sales of PCP in the United States for the purpose of monitoring and enforcing adherence to the agreed-upon prices and market shares;

f.     To issue price announcement and price quotations in accordance with the agreements reached;

g.     To sell PCP at non-competitive prices in accordance with the agreements reached; and

h.     To sell PCP only in agreed-upon territories in accordance with the agreements reached.

37.     The foregoing allegations are likely to have evidentiary support after a reasonable opportunity for discovery.

FRAUDULENT CONCEALMENT

38.     Throughout the relevant period, defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct against plaintiff and the class.

39.     Plaintiff and the members of the class did not discover, and could not have discovered through the exercise of reasonable diligence, that defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly  before this litigation was commenced.  Nor could plaintiff and the members of the class have discovered the violations earlier than that time because defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.  To the extent that plaintiff had any information regarding collusion with respect to PCP, plaintiff exercised due diligence.

40.     Defendants and their co-conspirators engaged in a successful, illegal price-fixing conspiracy with respect to PCP, which they affirmatively concealed, and which by its nature was inherently self-concealing, in at least the following respects:

a.      By meeting secretly to discuss the prices of PCP sold in the United States and elsewhere;

b.      By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

c.      By giving false and pretextual reasons for the pricing of PCP sold by them during the Class Period and by describing such pricing falsely as being the result of competitive factors rather than

collusion.

41.    As a result of defendants' and their co-conspirators' fraudulent concealment of their conspiracy, plaintiff and the class assert the tolling of any applicable statute of limitations affecting the rights of action of plaintiff and the members of the class.

INJURY TO PLAINTIFF AND THE CLASS

42.    The illegal combination and conspiracy alleged herein has had the following effects, among others:

       a.    Price competition in the sale of PCP has been restrained, suppressed and/or eliminated:

       b.    Prices for PCP sold by defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels; and

       c.    Direct purchasers of PCP from defendants, their co-conspirators, or their subsidiaries or controlled affiliates have been deprived of the benefit of free and open competition.

43.    As a direct and proximate result of the illegal conspiracy, plaintiff and the members of the class have paid more for PCP than they would have paid in the absence of the illegal conspiracy and have suffered damages in an amount presently undetermined.

DAMAGES

44.    During the period of the antitrust violations alleged herein, plaintiff and members of the class directly purchased PCP from defendants and/or their co-conspirators and, because of these antitrust violations, paid more for such products than they would have paid absent such violations.

12

45.    As a proximate result of defendants' and their co-conspirators' unlawful agreement and conspiracy, plaintiff and the members of the class have suffered injury and damages in their business and property in an amount to be determined.

REQUEST FOR RELIEF

WHEREFORE, plaintiff prays that:

A.    The Court determine that this action may be maintained as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and directing that reasonable notice be provided in compliance with Fed.R.Civ.P.23(c)(2):

B.    The Court adjudge and decree that the contract, combination and conspiracy alleged herein is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.    That judgment be entered against defendants and in favor of plaintiff and the class it represents for damages as allowed by law as determined to have been sustained by them, together with costs of suit, including reasonable attorney's fees;

D.    Defendants, co-conspirators, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of any defendant or in concert with it, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concern of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition:

E.    The Court award plaintiff and the class it represents attorneys' fees and costs, and pre-judgment interest as permitted by law; and

F.      The Court award plaintiff and the class it represents such other and further relief

as may be necessary and appropriate.

JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all of the claims

asserted in this Complaint so triable.

Respectfully submitted,


By: */s/ David R. Schaefer*
David R. Schaefer (ct04334)
BRENNER, SALTZMAN & WALLMAN, LLP
271 Whitney Avenue
New Haven, CT 06511
Telephone: (203) 772-2600
Facsimile: (203) 562-2098
Email: dschaefer@bswlaw.com
*Counsel for North American Rubber*
*Thread Company, Inc.*



Joel Davidow, Esq. DC Bar # 50849
KILE GOEKJIAN REED & MCMANUS, PLLC
1200 New Hampshire Avenue, NW
Suite 570
Washington, DC 20036
Telephone: (202) 659-8000
Facsimile:  (202) 659-8822
*Counsel for North American Rubber*
*Thread Company, Inc.*